**Cyril M. HUDAK, Plaintiff-Appellee,**

**v.**

**ECONOMIC RESEARCH ANALYSTS, INC., and Richard W. McIntyre, Defendants-Appellants.**

**No. 73-3742.**

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1974.

See also 5th Cir., 499 F.2d 994.

---

Guy K. Stewart, Jr., Warren M. Salomon, Miami, Fla., for defendants-appellants.

Jeffrey A. Tew, Richard H. Critchlow, Miami, Fla., for plaintiff-appellee.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

Defendants Economic Research Analysts, Inc. ("ERA"), a registered broker/dealer, and Richard W. McIntyre, its president, bring this appeal from a judgment of the United States District Court for the Southern District of Florida holding them jointly and severally liable to plaintiff Hudak under sections 10(b) and 20(a) of the Securities Exchange Act of 1934[1] and the Florida common law of fraud for losses incurred by Hudak in the course of certain securities transactions.

The present litigation arises from the activities of one Richard F. Petersen who, from September 13, 1968 to July 11, 1969, was employed by ERA as a registered representative for the purpose of selling securities to the public. While ostensibly acting in that capacity, Petersen collected money from plaintiff on the basis of representations that he had made and assurances that he would continue to make prudent investments on Hudak's behalf. The district court found that virtually all of those statements were false, and that Petersen had solicited money for legitimate purchases, converted it to his own use, and then covered his defalcations by persuading Hudak to accept worthless securities, which he touted highly.

Defendants do not dispute either the accuracy of these findings or the fact that this pattern of deceptive practices is sufficient to make out a case against Petersen. They protest vigorously, however, that they are not accountable to plaintiff for the wrongs committed by their employee and that, even should such liability exist under either federal

---

1. 15 U.S.C. §§ 78j(b), 78t(a).

or state law, they are shielded from its impact by the applicable statutes of limitations. Finding defendants' attack partially successful, we reverse as to the individual defendant McIntyre, but affirm the judgment against ERA·on the basis of the pendent state fraud claim.

### THE FEDERAL CLAIM

Though defendants raise numerous objections to the imposition below of liability under federal securities law, we are met at the outset by the question of the proper limitations period to apply to any such federal claim. The analysis required of a court in determining the proper time measure for private actions brought under the federal securities provisions at issue here was recently sketched by Judge Clark in his opinion for this Court in Sargent v. Genesco, Inc., 5 Cir. 1974, 492 F.2d 750, 758.

The federal securities laws contain no limitation period that is expressly applicable to claims under section 10(b) and rule 10b–5, nor does federal law prescribe any general statute of limitations for civil actions. Consequently, the limitation period which the forum state applies to the state remedy which bears the closest substantive resemblance to rule 10b–5 and which best effectuates its purpose is to be applied. [citations omitted].

Evidently relying on our observation in Azalea Meats, Inc. v. Muscat, 5 Cir. 1967, 386 F.2d 5, 8, that "the gravamen of an action brought under section 10(b) of the Securities Exchange Act of 1934 is fraud," the district court measured the timeliness of plaintiff's action against the three-year limitations period provided by § 95.11(5)(d) Florida Statutes for "an action for relief on the ground of fraud." Defendants contend, however, that § 517.301(1) of the Florida blue sky laws, which deals with fraudulent transactions in securities, more nearly embodies the policies behind section 10(b) and the related Rule 10b–5, and that the two-year limitations period applicable in suits brought to rescind sales conducted in violation of that statute [2] should therefore govern a 10b–5 action in Florida. We find this argument persuasive.

The anti-fraud provisions of the Florida securities statutes and Rule 10b–5, promulgated by the Securities and Exchange Commission as "necessary and appropriate" for the implementation of section 10(b) of the 1934 Act, address the problems of false and misleading communications involving the sale of securities with strikingly similar language. Indeed, as an examination of the texts set out in the margin indicates[3], commentators have justifia-

2. This limitations period is set out in § 517.21 Florida Statutes.

3. 17 C.F.R. § 240.10b–5 (Rule 10b–5) provides that:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
(a) to employ any device, scheme, or artifice to defraud,
(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

§ 517.301 Florida Statutes provides in part that:
It is unlawful, and a violation of the provisions of this chapter, for any person:
(1) In the sale or purchase of any security in this state, including any security exempted under the provisions of § 517.05, and including any securities sold in any transaction exempted under the provisions of § 517.06, directly or indirectly:
(a) To employ any device, scheme, or artifice to defraud;
(b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;
(c) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

bly referred to § 517.301(1) of the Florida Statutes as "the mirror image of Rule 10b-5."[4] This congruence between the state and federal schemes is not limited to a surface resemblance, but extends as well to judicial elaborations on the elements necessary to make out a case—requirements differing significantly from those applicable to the Florida common law of fraud.

The common law remedy imposes upon the plaintiff the burden of demonstrating, *inter alia*, "(1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon . . . ." Poliakoff v. National Emblem Insurance Company, 249 So.2d 477, 478 (Fla.App., 3rd Dist. 1971). In contrast, both this Circuit and, as the parties agree, the Florida state courts have relaxed such traditional notions of scienter and evil purpose in actions brought under their respective securities regulation provisions. *See* Smallwood v. Pearl Brewing Company, 5 Cir. 1974, 489 F.2d 579, 606; State v. Houghtaling, 181 So.2d 636 (Fla.Sup.Ct.1965). Though it would appear that Florida has not entirely abandoned the requirement of a showing of culpability, Sparks v. State, 256 So.2d 537 (Fla.App., 4th Dist.), nor yet embraced a pure negligence standard, the present hesitant growth of the Florida blue sky law accurately tracks the development of federal securities regulation in this Circuit. In our most recent statement on the scienter requirement in 10b-5 litigation, we observed that the law is presently in a state of considerable flux, and held it sufficient for the moment to note that "some culpability, beyond mere negligence, is required." Smallwood v. Pearl Brewing Company, *supra*, 489 F. 2d at 606.

We concur in the reasoned judgments of the Seventh and Eighth Circuits which, when faced with the present choice between a forum state's fraud and blue sky limitations periods for use in federal securities litigation, found the similarity between the blue sky and 10b-5 scienter requirements crucial to their determination. Parrent v. Midwest Rug Mills, Inc., 7 Cir. 1972, 455 F. 2d 123; Vanderboom v. Sexton, 8 Cir. 1970, 422 F.2d 1233. Given the similarity of § 517.301(1) and Rule 10b-5, in both language and interpretation, and the congruence between the specific remedy sought here—return of the purchase money—and the remedy of recission for which Florida securities law provides a two-year statute[5], we hold that the district court erred in applying the three-year fraud period. The present action was filed on April 11, 1973. Since the district court found and plaintiff agrees that the discovery of the fraud dates from May of 1970, the federal cause of action is barred by the two-year limitations rule we announce today.[6]

---

4. Spencer & Bobroff, Disclosure Under the Florida Securities Act, 23 U.Miami Law Review 593, 594.

5. Though we look to state law for the length of the limitations period, "the date when a claim accrues so as to trigger the state law limitation period is a matter of federal law and our court-fashioned rule is that a 10b-5 claim accrues when the plaintiff actually discovers the alleged fraud." Sargent v. Genesco, Inc., 5 Cir. 1974, 492 F.2d 750, 758. Hence our acceptance of the two year term imposed by § 517.21 in no way constitutes an adoption of the statutory provision that the time be measured from the date of sale rather than the date of discovery. We "borrow only the chronometric aspects and not the procedural or substantive nuances of the law of the forum." Wolf v. Frank, 5 Cir. 1973, 477 F.2d 467, 475.

6. Plaintiff argues that, notwithstanding the similarity between the federal and Florida securities laws, we are precluded from utilizing the blue sky limitations period by our decision in Azalea Meats, Inc. v. Muscat, 5 Cir. 1967, 386 F.2d 5. While it is true that in *Azalea Meats* the Court applied Florida's three year limitations period for common law fraud to a 10b-5 suit, it is equally clear that the parties had raised no question either in the district court or on appeal as to the propriety of that action. We have not-

## THE STATE CLAIM

■■ All the parties to this suit are residents of Florida. Hence the district court was empowered to hear a claim based on violation of the state common law of fraud only in the discretionary exercise of pendent jurisdiction. In light of its plausible, though erroneous, conclusion that the federal cause of action was not barred by the applicable statute of limitations, the court below was unquestionably justified in considering the issue of liability for fraud under Florida law. Plaintiff's complaint presented a federal question of "substance sufficient to confer subject matter jurisdiction on the court," and the "state and federal claims . . . derive[d] from a common nucleus of operative fact." United Mine Workers v. Gibbs, 1966, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218. Article III requires no more; and, given the significant overlap of the evidence necessary to prove the respective contentions, all "considerations of judicial economy, convenience and fairness to litigants" argued in favor of the assumption of federal jurisdiction over the entire case. *Id.* at 726, 86 S.Ct. at 1139.

■ The question now occurs, however, as to whether, having determined that the federal claim ought to have been dismissed at the outset, we should proceed to review the holding on the pendent state claim or remand that count to the district court with directions to dismiss for want of jurisdiction. Confronting the identical question in Parrent v. Midwest Rug Mills, Inc., *supra*, the Seventh Circuit considered these alternatives and determined to review the pendent cause on its merits, noting that,

[c]ertainly judicial economy directs that we dispose of the issues here instead of sending the case back to the district court with directions to dismiss [the state law counts] and virtually sending the plaintiffs to the state court where it is likely that the case would go through the trial and appellate courts. The parties would be greatly inconvenienced by having to retry the issues. It also would be unfair to the parties, who have litigated the issues in a . . . trial in the district court and filed briefs and argued here, to have us refrain from disposing of [the state law counts] after passing on the judgment with respect to the other counts, especially in view of the "federal judicial resources" already committed.

455 F.2d at 129. We find this reasoning persuasive; for, as the *Parrent* Court observed, the very factors which *Gibbs* lists as militating in favor of the exercise of pendent jurisdiction at the trial level—judicial economy, convenience, and fairness—support review of the entire case here.

■ Though not entirely without merit, defendants' arguments on the substance of the state claim[7] can be quickly stated and as easily dispatched. They first contend that this action, filed in April of 1973, does not come within the three-year statute of limitations applicable to suits for relief on the ground of fraud. Section 95.11(5)(d) provides that a cause of action for fraud shall not "be deemed to have accrued until the discovery by the aggrieved party of the

---

ed in recent opinions the existence of a live question concerning the statute of limitations to apply in these Florida cases, though particular facts have intervened in each instance to make a decision on that issue unnecessary. *See* Wolf v. Frank, *supra*, 477 F.2d at 475; Sargent v. Genesco, Inc., *supra*, 492 F.2d at 758.

7. Despite the availability of an action under § 517.21 for sales in violation of the blue

sky laws, Florida has explicitly preserved all other remedies historically available.

Nothing in this chapter shall limit any statutory or common law right of any person to bring any action in any court for any act involved in the sale of securities, or the right of the state to punish any person for any violation of any law.
§ 517.22 Florida Statutes.

facts constituting the fraud." The state courts have adopted a so-called "objective" standard, charging the plaintiff with "knowledge of facts which would have been discovered in exercise of due diligence." Matthews v. Matthews, 222 So.2d 282, 284 (Fl.App., 2d Dist. 1969), quoting Azalea Meats, Inc. v. Muscat, S. D.Fl.1965, 246 F.Supp. 780.

The district court dated Hudak's knowledge of the fraud from May of 1970, when his attorney discovered that certain of Petersen's statements on the economic vitality of a recommended company were untrue. Defendants advance as an alternative time of revelation July of 1969, nearly four years prior to filing, when Petersen convinced Hudak to accept 5,000 shares of the bogus Marine Environmental Data, Inc. in place of a requested investment. The court below specifically rejected this argument, finding that Hudak reasonably accepted Petersen's explanations on the superior quality of the Marine Environmental enterprise. While plaintiff Hudak, a Catholic priest, might well have credited Petersen's assurances more readily than an experienced securities trader or a natural sceptic, we cannot say that his continued confidence in Petersen dropped below the level of reasonable trust into credulity or naviete. Though the law of fraud does not endorse a hear no evil, see no evil approach, neither does it require that an aggrieved party have proceeded from the outset as if he were dealing with thieves. The action was timely filed.

Defendants finally contend that, granting the full measure of Petersen's fraud, it may not be charged to them. As to the corporate defendant ERA, this position is indefensible. Under settled precepts of Florida law, a principal is liable to third parties for the fraudulent acts of its agents if those acts were committed within the scope of the agents' employment and authority. One Hour Valet of America v. Keck, 157 So.2d 83 (Fla.App., 2d Dist.1963). The boundaries of an agent's authority are "determinable as questions of fact, and the findings will not be set aside unless clearly erroneous." *Id.* at 83. The district court directed explicit attention to this matter in its findings of fact and held that Petersen had indeed worked his devious plan within the parameters of his agency. Our examination of the record has disclosed no basis for disturbing that conclusion.

The individual defendant McIntyre stands on much firmer ground, however, with this objection. The judgment against him turned exclusively on the district court's determination that he was a "controlling person" within the meaning of section 20 of the Securities Exchange Act of 1934 [8], and hence liable for failure to supervise Petersen adequately. Whatever the merit of that holding as a matter of federal law, it does not suffice to make out a claim under the common law of Florida. There are no findings that ERA is merely a corporate *alter ego* for McIntyre, that McIntyre participated in Petersen's schemes, or that he permitted Petersen to continue in employment with knowledge of the latter's crooked ways. In the absence of such demonstrations, the law of Florida does not call McIntyre to account.

The judgment is therefore affirmed insofar as it imposes liability on defendant ERA, and reversed as to defendant McIntyre.

Affirmed in part, reversed in part.

8. 15 U.S.C. § 78t(a).