TOLEDO TRUST COMPANY, as Executor of the Estate of Henry T. Ritter, Deceased, Plaintiff,

v.

William N. NYE et al., Defendants.

Civ. No. C 72–281.

United States District Court, N. D. Ohio, W. D.

Feb. 25, 1975.

Willis C. Bullard, Detroit, Mich., Edward F. Weber, Toledo, Ohio, for plaintiff.

Charles W. Peckinpaugh, Jr., Ralph S. Boggs, Toledo, Ohio, George E. Allen, Fort Myers, Fla., for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, District Judge.

This cause came to be heard upon various motions for summary judgment by all parties and also upon a motion of plaintiff to compel discovery.

The case involves a claim by the plaintiff for damages, rescission, imposition of a constructive trust and punitive damages arising out of the sale of securities of a close corporation. Plaintiff is the executor of one Henry Ritter who at the time of his death owned 143 shares of stock of defendant Lantana Flower Farms, Inc. (hereinafter Lantana). Lantana, a Florida corporation with its principal place of business in Florida, was engaged in the commercial production of flowers. It was merged into defendant United Brands Company, formerly United Fruit Company (hereinafter United). The individual defendants William Nye (hereinafter Nye), Jack Jamison and Pinckney Cook (hereinafter Cook) were shareholders and directors of Lantana; defendants Shirley Nye and Erma Cook, the wives of defendants Nye and Cook, were shareholders of Lantana, with Mrs. Nye serving as an officer of Lantana. The individual defendants Nye, Kamison and Cook were the incorporators, directors and shareholders of defendant c–N–k Corporation (hereinafter c–N–k), also a Florida corporation, which was formed on August 8, 1968.

The essence of the complaint is that the individual defendants defrauded the plaintiff in acquiring Ritter's 143 shares of Lantana stock pursuant to buy-out provisions of Article XI of Lantana's By-Laws. Plaintiff claims that the defendants failed to disclose that United was negotiating with the defendants for the purchase of Lantana and c–N–k during the time when the defendants were negotiating with the plaintiff to complete the buy-out transaction. Plaintiff claims causes of action under § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 of the Securities Exchange Commission, common law fraud and deceit under Ohio and Florida law, violations of various fiduciary duties of the defendants owed to the plaintiff as a shareholder the acquisition of a corporate opportunity, and unlawful exertion of business compulsion and economic duress upon plaintiff's decedent in connection with his transfer of 107 shares of Lantana to Nye in 1967 and 1968. This Court's jurisdiction is invoked both under diversity of citizenship and 28 U.S.C. § 1331.

The defendants Nye, Kamison and Cook have moved the Court for summary judgment on all of plaintiff's claims, as have defendants United, Lantana and c–N–k. Plaintiff has moved the Court for summary judgment on its claim under § 10(b) and 10b–5. The pleadings indicate that certain legal disputes exist. The Court will examine these issues to determine if summary judgment is appropriate.

### I. *Transfer of 107 Shares*

It appears from the pleadings and affidavits submitted by the defendants that Ritter transferred 107 shares of Lantana to defendant Nye during 1967 and 1968. The affidavits of Cook and Kamison establish that they also transferred 107 shares each to Nye during the same period. The transfers apparently were made by the shareholders of Lantana to induce Nye to remain as the president and manager of Lantana's operations. The transfers of Ritter, Kamison and Cook gave Nye fifty-one percent of the shares of Lantana. Deposition of William Nye at 2–8. The depositions and affidavits indicate that Mr. Nye continued in his position as the manager of Lantana's flower growing operations. Plaintiff claims that the actions involved in the transfer of 107 shares of Ritter's stock to Nye were the result of duress and compulsion upon Ritter.

The Court finds that plaintiff has not shown that there is any genuine issue of fact involved in this claim. Defendants have supported their contentions through affidavits and depositions. Plaintiff may not merely rest upon the

pleadings but rather must come forward to show genuine issues of fact when defendants have brought forward and supported their motion for summary judgment. Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (6th Cir. 1974). Plaintiff has not shown that there is any genuine dispute of facts about the transfer of 107 shares. There is merely a dispute as to the legal consequences of the transfer.

■ It is clear from a reading of the affidavits and depositions and exhibits thereto that decedent Ritter was under no economic duress or business compulsion when he transferred 107 of his Lantana shares to Nye. Ritter and the other two shareholders were faced with the prospect of losing the full-time services of the person who ran the daily affairs of Lantana. Nye's consideration in return for obtaining fifty-one percent of Lantana's stock, including Ritter's 107 shares pursuant to an option granted him at the time of his initial employment and incorporation of the corporation was his continued service as manager. It does not appear in the matters now before the Court that Nye was under any obligation to continue in the employment of the corporation. The shareholders Ritter, Kamison and Cook received the benefit of Nye's continued services and Nye forbore from seeking other employment. The Court therefore concludes that there was sufficient consideration for the transfer. S. Williston, Contracts §§ 135–135A (3d ed. 1957); Am.Jur.2d Contracts § 85 (1964). The claim of the plaintiff that the transfer of the 107 shares was without consideration is not sustained nor is there any indication of duress or compulsion, but rather the transfer was the result of a business judgment of Ritter, along with the two other shareholders, that they desired to keep Nye in his position with Lantana. Judgment must therefore be entered against the plaintiff on this claim.

II. *Corporate Opportunity Claim*

Plaintiff claims that defendants Nye, Cook and Kamison breached their fiduciary duties to the plaintiff, both as directors to a shareholder and majority shareholders to a minority shareholder, in acquiring a corporate opportunity that rightfully belonged to Lantana. Plaintiff contends that in forming c–N–k the defendants acquired an opportunity to buy agricultural lands that should have been acquired for Lantana. Apparently the lands purchased for c–N–k were in the same general vicinity as the Lantana properties and were leased to Lantana for its flower-growing activities.

■ The corporate opportunity doctrine prohibits a director or officer from appropriating to himself a business opportunity which in fairness should belong to the corporation. The test for imposing liability on the director or officer is "whether there is a specific duty, on the part of the officer sought to be held liable, to act or contact in regard to the particular matter as the representative of the corporation—all of which is largely a question of facts." 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 362 at 235 (rev. ed. 1965).

■ It is a question of fact whether the property acquired for c–N–k by the defendants was property which Lantana needed or was seeking or which the defendants were otherwise under a duty to acquire for Lantana. The doctrine does not apply where the corporation would be unable to avail itself of the opportunity. *Id.* at § 862. At this point in the proceedings, there do not appear to be sufficient facts to show whether the land purchased for c–N–k was land needed or sought by Lantana, or whether Lantana had the ability to avail itself of the opportunity. Defendants argue that Lantana did not have sufficient funds for the purchase of property. However, mere financial inability of the corporation may not be adequate to exonerate an executive who appropriates an opportunity. W. H. Elliott & Son Co. v. Gotthardt, 305 F.2d 544, 546–47 (1st Cir. 1962); Fletcher, *supra*, § 862.1 at 241–42. The Court concludes that there

is a factual dispute about the existence of a corporate opportunity and the ability of Lantana to respond to the opportunity if it existed. Summary judgment must therefore be denied.

### III. *Stock Option Exercise*

Plaintiff vigorously argues that the corporation did not properly exercise the stock option because there was no formal meeting of the directors authorizing the exercise of the option and also that the defendants waived the exercise of the option by failure to close the purchase within the thirty days provided in the By-Laws. Plaintiff also contends that the restriction of transfer of Ritter's stock was not enforceable against it because the restriction was not endorsed on the stock certificate.

█ Whatever merit, if any, the above arguments might have had if timely asserted, this issue must now be resolved against the plaintiff. Plaintiff is estopped from denying the validity of the exercise of the stock option of Article XI of the By-Laws because it acquiesced in the operation of the option and failed to object in a timely fashion to the provisions of Article XI. The depositions disclose that the plaintiff proceeded to follow the option provisions of Article XI and sought to arrive at a mutually agreeable price for Ritter's Lantana stock. Specifically, Mr. C. F. Hyrne, plaintiff's trust officer who was handling Ritter's estate at one time, wrote to Lantana's attorney on April 10, 1969:

> 4. The Toledo Trust Company acknowledges that as of June 7, 1968, the company [Lantana] has exercised its option to purchase the Henry Ritter shares and that we are now concerned with arriving at the fair market value of those shares, either by agreement or by the application of the provisions of the bylaws. Deposition of Clarence Hyrne, Exhibit 11.

Toledo Trust pursued a course of conduct that acknowledged the validity of the stock purchase option and, until this suit was filed, never contested the provisions of the option.

The Court finds that plaintiff is estopped from denying the validity of the stock option contained in Article XI of Lantana's By-Laws. "[A]n estoppel arises 'where a man hath done some act, or executed some deed, which estopps or precludes him from averring anything to the contrary.' " Ensel v. Levy & Bro., 46 Ohio St. 255, 259, 19 N.E. 597, 599 (1889) (quoting Blackstone). Under the equitable principles of estoppel in either Ohio or Florida law, the plaintiff's actions of proceeding according to the provisions of Article XI without objection precludes the present claim of invalidity. United Contractors, Inc. v. United Construction Corp., 187 So.2d 695, 701–02 (Fla.App.Ct.1966); Holmes v. Hrobon, 93 Ohio App. 1, 43–44, 103 N.E.2d 845 (1951), aff'd in part, rev'd in part, 158 Ohio St. 508, 110 N.E.2d 574 (1952).

### IV. §§ *10(b) and 10b–5*

Although plaintiff is precluded from contesting the validity of the exercise of the option to repurchase Ritter's Lantana stock, there still remains the issue which lies at the heart of this case: was there actionable fraud committed in arriving at the sale price of Ritter's stock. Defendants argue that there was no fraud in the purchase of Ritter's stock because plaintiff was bound to sell and the defendant Lantana had a right to purchase the stock. However, defendants overlook the main thrust of this action, which seeks to determine if there was any fraud perpetrated in the one area where the two parties were free to negotiate, which was the establishment of the fair market value of the stock. Plaintiff claims that fraud under common law principles and under § 10(b) and 10b–5 was involved as a result of failure to disclose the negotiations between the individual defendants and United for the sale of Lantana and c–N–k, and also involved because of repre-

sentations as to value which were made by the defendants to plaintiff.

Defendants contend that the information about negotiations with United for the sale of Lantana and c–N–k in the Spring of 1969 was immaterial in establishing the value of Lantana's stock for the purposes of Article XI because the date of valuation was May 31, 1968. However, the crux of this case is the determination of the fair market value of Lantana's stock on May 31, 1968. The amount of $2,750,000 paid by United in August, 1969, to the defendants for the combined stock of Lantana and c–N–k would be evidence of the value of Lantana's stock on May 31, 1968, taken in connection with evidence showing the value paid for the c–N–k stock and changes in Lantana's fiscal condition from June, 1968 to August, 1969.

It appears from the pleadings, depositions and affidavits and exhibits that the defendants Lantana and Nye, and their agents, made representations to the plaintiff as to the fair market value of Lantana's stock. Defendant Nye stated that the fair market value of the Lantana stock was $50 per share in a letter to the executor dated June 7, 1968. Exhibit 23–1, Deposition of Edward Weber. Later, Mr. Nye offered $15,000 as a fair value of the stock in a telephone conversation with plaintiff's trust officer. Deposition of Richard Castor at 29–30 and Exhibit 10 thereto; Deposition of William Nye at 35–37; Deposition of Clarence Hyrne at 34–35, 50. Plaintiff accepted the offer of $15,000 and transferred to stock to an intermediary bank which held the $15,000 deposited by the defendant. Deposition of Richard Castor at 29–30.

Defendants vehemently argue that Lantana was proceeding under the provisions of Article XI for a determination of the value of the stock when the parties could not agree upon a price. According to the provision under Article XI, § 2(e), in the event the buyer and seller could not agree upon the value by the time of closing, the fair market value would be determined by the higher of the book value according to the balance sheet or an amount of ten times the average earnings of shares for the three years prior to the exercise of the option. Defendants claim that their deposit of $14,607.14, allegedly the book value of Ritter's 143 shares, amounted to a resort to the compulsory buy-out provisions and were proceedings under Article XI, § 2(f). Plaintiff, however, claims that the $15,000 actually paid was the result of the parties reaching an "agreed upon" determination of the fair market value of Lantana stock.

There is thus a genuine dispute of whether the parties arrived at the price for Ritter's stock under an "agreed upon" value or the book value method where the parties could not agree. This dispute is one of conclusion to be drawn from the underlying facts, which at the present time are not sufficiently clear that the Court can say they are not disputed. The dispute must be resolved by the trier of fact. If the value was determined by the agreement of the parties, the representations of value and the nondisclosure of material information which would affect the value may amount to actionable fraud. However, if the price paid was determined according to the book value and the result of proceeding under Article XI, § 2(f), the price paid was not pursuant to an agreement of the parties but rather the enforcement by the plaintiff of pre-existing rights. It is up to the fact-finder to resolve the dispute after evidence is submitted. On the present state of the pleadings and supporting materials, there is evidence that would support either of two conflicting conclusions. In such a situation, summary judgment is not appropriate, even though both sides have moved for summary judgment upon plaintiff's claim under 10b–5.

One last item which must be resolved concerns the statute of limitations for plaintiff's claim under Rule 10b–5. Defendants claim that the statute of limitations has run, thus precluding an action under 10b–5. Section 10(b) of the Securities Exchange Act of

1934, and Rule 10b–5 promulgated thereunder, contains no statute of limitations. Since the federal statute has no limitation, the Court must apply the applicable state statute of limitations. Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Charney v. Thomas, 372 F.2d 97, 99 (6th Cir. 1967). The problem then becomes to determine which state period of limitations is applicable to the federal action under 10b–5. All parties agree that Ohio law should apply, but disagree as to which Ohio period of limitations is applicable. Defendants contend that Ohio Revised Code § 1707.43, part of Ohio's Blue Sky Law, contains the applicable two year statute of limitations. Plaintiff argues that the four-year period for actions for fraud contained in § 2305.09 applies to their 10b–5 claim.

 In determining which period of limitations to apply, the Court must utilize the state period of limitations that most closely effectuates the purpose of the federal remedy. International Union, United Automobile, Aerospace and Agricultural Implement Workers, AFL–CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Charney v. Thomas, *supra*, 372 F.2d at 100. The Court of Appeals for the Sixth Circuit has previously held that the Michigan six year limitation on actions for fraud applied to a claim under § 10(b) rather than a two year period contained in the Michigan Blue Sky Law. The Court of Appeals stated in *Charney*:

> Although in some cases the local Blue Sky Law might be the more appropriate point of reference, in the present case the Michigan law contains no provision similar to section 10(b) of the federal law. Thus, the normal six-year period [for fraud actions] should apply despite the fact that actions under section 10(b) are not exactly the same as common law fraud actions. 372 F.2d at 100.

Defendants argue that the law concerning the choice among state statute of limitations has changed since Charney v. Thomas, *supra*, citing such decisions as Hudak v. Economic Research Analysts, Inc., 499 F.2d 996 (5th Cir. 1974); Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (9th Cir. 1972); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). The courts in *Hudak, Parrent* and *Vanderboom* applied the state Blue Sky Law statute of limitations rather than the state limitations on fraud actions. Defendant further cites the argument contained in Martin, Statutes of Limitations in 10b–5 Actions: Which State Statute is Applicable? 29 Bus.Law. 443 (1974), that the shorter state Blue Sky Law limitations best effectuates the policies of the federal securities actions rather than the longer period of limitations for fraud. Martin contends that the shorter period of limitations should apply because actions under 10b–5 are more liberal than the common law fraud actions, and thus fairness to defendants requires a shorter period of liability to suit.

 The Court concludes that despite persuasive arguments for a contrary conclusion, the applicable state statute of limitations for plaintiff's claims under 10b–5 is the four-year period for fraud actions. The Court bases its decision upon an analysis of the state Blue Sky Law and the objectives of 10b–5.

Under Ohio's securities law, civil liability is imposed upon a seller under § 1707.41 for false material statements in a circular, prospectus or advertisement in offering a security for sale. Section 1707.43 provides that any sale in violation of any of the provisions of the Ohio Blue Sky Law is voidable at the election of the purchaser. Both §§ 1707.41 and actions of two years. Section 1707.-44(B) specifies that, among other things, it is a violation of the Ohio securities law to knowingly make a false representation concerning material and relevant fact in any oral statement, prospectus, circular, description, application or written statement in connection with selling any security in this state. No

limitations of actions is contained in § 1707.44, so that section must be read in connection with Section 1707.43, which provides a remedy for the violation provided in Section 1707.44.

It is clear after examining the statutory scheme that the Ohio Blue Sky Law has no provision for the action complained of by the plaintiff, which is an action by a seller claiming fraud by a purchaser in the sale of a security. It was precisely this type of alleged fraud that prompted the Securities Exchange Commission to enact Rule 10b–5. *See* 1 A. Bromberg, Securities Law; Fraud, SEC Rule 10B–5 § 2.2(420) (1973). The prior congressional antifraud rules left one loophole which was fraud by purchasers, and Rule 10b–5 sought to prohibit individuals or companies from buying securities if they engage in fraud in their purchase. *Id.*

Plaintiff is alleging in this action that not only did the defendants actively misrepresent the actual fair market value of Lantana's stock but failed to disclose the material facts which included the inquiries and negotiations of United to purchase Lantana and c–N–k. There are no provisions in the Ohio Blue Sky Law reaching either fraudulent misrepresentations by the purchaser of securities or for nondisclosure of material facts by the purchaser amounting to fraud. For the same reasons that compelled the Court of Appeals in Charney v. Thomas, *supra*, to conclude that there were no provisions in the Michigan securities law similar to § 10(b), the Court concludes that there are no provisions in the Ohio Blue Sky Law similar to Rule 10b–5 for the protection of defrauded sellers of securities. While a 10b–5 action is not exactly like the common law action for fraud, the four-year limitation provision of § 2305.09, Ohio Revised Code, should be applied to plaintiff's claim under 10b–5. The plaintiff's

claim under 10b–5 is thus not barred by the statute of limitations.[1]

## V. *Discovery Motion*

 The last item to be determined is a motion by the plaintiff to compel defendant United to produce employees or agents for deposition. By pretrial order filed August 5, 1974 the Court ordered that all discovery be completed by October 31, 1974. Plaintiff served notice on October 24, 1974 that it wanted to depose in Toledo, Ohio defendant United through J. F. Powers, General Auditor, and W. S. Madden, Assistant Manager. Plaintiff alleges that counsel for United arranged to have the depositions taken on October 31, 1974 in Boston, Massachusetts, home offices of United, but apparently shortly before the 31st date, counsel for United objected to the depositions. Counsel for United has not responded to these allegations and counsel for the individual defendants opposed the present motion.

The Court finds that plaintiff made a good faith effort to comply with the cut-off date for discovery, and was frustrated from completing its discovery within the time provided. The Court will require the defendant United to make the requested two officers available in Toledo, Ohio for deposition by the plaintiff.

Therefore, for the reasons stated herein and for good cause appearing, it is

Ordered that the motion for summary judgment filed by the defendants William Nye, Shirley Nye, Pinckney Cook, Erma Cook and Jackson Kamison should be and hereby is denied EXCEPT as hereinafter provided, and it is

Further ordered that judgment should be entered against the plaintiff in favor of all defendants on plaintiff's Eighth Cause of Action stated in its complaint, and it is

---

1. Plaintiff's cause of action under 10b–5 accrued upon discovery of the fraud, applying the tolling provisions of federal securities law. Holmberg v. Armbrecht, *supra*, 327 U. S. at 395, 397, 66 S.Ct. 582; 3 L. Loss, Securities Regulation ch. 11C at 1771–77 (3d ed. 1961). It is uncontroverted that plaintiff learned of the sale of the Lantana stock to United on August 13, 1970, with the suit filed August 18, 1972.

Further ordered that the motion for summary judgment filed by defendants United, Lantana and c–N–k should be and hereby is denied, and it is

Further ordered that the motion for partial summary judgment filed by plaintiff should be and hereby is denied, and it is

Further ordered that the motion filed by plaintiff to compel discovery should be and hereby is granted, and the defendant United Brands is hereby ordered to produce at Toledo, Ohio Messrs. J. F. Powers and W. S. Madden for discovery depositions by plaintiff at a time mutually agreed upon by the parties but in no event later than Monday, March 17, 1975, and it is

See also, D.C., 378 F.Supp. 441; D. C., 387 F.Supp. 906.

Further ordered that this case will go forward for trial on April 21, 1975 as previously scheduled.

It is so ordered.