W. D. KIRK, Jr., et al., Plaintiffs,

v.

FIRST NATIONAL BANK OF COLUMBUS the Hardaway Company, f/k/a Hardaway Construction Co., Inc., Defendants.

Civ. A. No. 75–8–Col.

United States District Court,
M. D. Georgia,
Columbus Division.

Oct. 20, 1977.

C. E. Gregory, Jr., Timothy R. Askew, Jr. of Arnall, Golden & Gregory, Atlanta, Ga., Neal B. Littlejohn of Owens, Littlejohn, Gower & Pugh, Columbus, Ga., for plaintiffs.

J. Quentin Davidson, Jr., Marcus B. Calhoun, Jr., Frank K. Martin of Martin, Kilpatrick & Davidson, Columbus, Ga., for defendants.

## ORDER DISPOSING OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

OWENS, District Judge.

This order disposes of defendants' motions for summary judgment filed April 15, 1977. Those motions present only three substantial issues, to wit, whether plaintiffs' 10b–5 count is time barred, whether plaintiffs' action is barred by the doctrine of res judicata or collateral estoppel, and whether plaintiffs' count one states a cause of action under Georgia law.

### The Facts

In the late 1950's and early 1960's, Wright Contracting Company (hereinafter Wright Co.) had a one third interest in Oman-Farnsworth-Wright (hereinafter OFW), a joint venture engaged in road construction in Pakistan under contracts let by the Army Corps of Engineers. The work required specialized construction equipment which, upon completion of the venture, was sold to a Lebanese corporation for approximately $370,000, about ten percent more than the equipment's salvage value. Eventually this same equipment was purchased by another American joint venture for use in Afganistan. The purchase price was about $2,370,000. Apparently, unbeknown to other Wright Co. shareholders, some substantial portion of the $2,000,000 difference in purchase prices wound up in the hands of R. H. Wright, Jr., president, director and majority shareholder of Wright Co.

During the OFW venture and until his death in 1964, W. D. Kirk, Sr. was a shareholder in Wright Co. Upon his death intestate, his shares were divided equally among his children, the present plaintiffs, W. D. Kirk, Jr., Gertrude S. Kirk and Richard R. Kirk.

In 1971, the Hardaway Company (hereinafter Hardaway) offered to purchase all of the shares of Wright Co. R. H. Wright, Jr. conducted sale negotiations on behalf of Wright Co., and an agreement was reached whereby the purchase price would be seventy five percent of book value with September 1, 1971 as the closing date. Meanwhile, the Internal Revenue Service (hereinafter IRS) had somehow discovered the details of the OFW equipment transaction, and by August 1971, R. H. Wright, Jr. and perhaps a few other Wright Co. employees were aware of a strong possibility that tax deficiencies might be assessed against R. H. Wright, Jr. and Wright Co. On August 31, 1971, the day before closing, either R. H. Wright, Jr. or other Wright Co. representatives informed Hardaway of the impending tax liabilities. R. H. Wright, Jr. then agreed to indemnify both Hardaway and

Wright Co. against losses occasioned by these possible tax assessments, and without more, the sale of Wright Co. to Hardaway was completed on schedule the next day. Prior to the sale of their stock, plaintiffs were unaware of the IRS investigation, the underlying OFW equipment transaction and R. H. Wright, Jr.'s agreement to indemnify.

Plaintiffs allege the following: that R. H. Wright, Jr. breached fiduciary duties owed Wright Co. by misappropriating company assets during the OFW equipment transaction; that a substantial factor in determining the selling price of their shares was book value of those shares; that the book value figure actually used did not reflect sums owed Wright Co. by R. H. Wright, Jr. because of misappropriation of company assets; that at the time of sale both R. H. Wright, Jr. and Hardaway knew of the improper valuation or of facts indicating the likelihood of improper valuation; and that both, in either misinforming or failing to inform plaintiffs of this material information, are liable for fraud and for violation of Rule 10b–5.

*Applicable 10b–5 Statute of Limitations*

If, as this court finds, the applicable statute of limitations for Rule 10b–5 is four years, then plaintiffs are well within that limit. However, even if the applicable 10b–5 limitations were two years, plaintiffs contend that a sufficient factual issue remains so as to avoid summary judgment, that is, determining the moment the limitations period commenced running. The court finds it unnecessary to consider the merits of this latter contention.

All parties agree that the statute of limitations

> . . . period which the forum state applies to the state remedy which bears the closest substantive resemblance to rule 10b–5 and which best effectuates its purpose is to be applied. *Sargent v. Genesco, Inc.,* 492 F.2d 750, 758, (5th Cir. 1974) (citations omitted).

The parties disagree upon application of this standard. Plaintiffs favor Georgia's fraud remedy with its attendant four year limitation period while defendant advances the two year period found in Georgia's own Securities Act, Ga.Code Ann. § 97–112. The same question has previously arisen in Georgia's federal courts, and since the Fifth Circuit decision in *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975), the two year period has always been chosen. *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 429 F.Supp. 359 (N.D.Ga.1977); *Mooney v. Tallant,* 397 F.Supp. 680 (N.D.Ga.1975); *Putney v. Hamilton Industries, Inc.,* No. C74–1874A (N.D.Ga. Sept. 30, 1975); *Radio Station KVOL, Inc. v. Thronquest,* No. 274–49 (S.D.Ga.1974). Plaintiffs, allegedly defrauded sellers, attempt to distinguish these cases, all of which involved defrauded purchasers, by noting that Georgia's securities law provides no remedy for defrauded sellers and by arguing that the Supreme Court's decision in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) requires a different analysis than that found in cases decided prior to *Ernst.*

*Hudak, supra,* was a 10b–5 action in which the applicable statute of limitations was in dispute. Applying the "closest substantive resemblance" test of *Sargent, supra,* the *Hudak* plaintiffs favored the three year limitation associated with Florida's fraud law while the defendants advanced the two year limit of Florida's Blue Sky Law. The Fifth Circuit found that Florida's Blue Sky remedy bore the closest substantive resemblance to the 10b–5 remedy and held that a two year limit applied. In making this selection, the court primarily relied on three factors. First, the Florida Blue Sky Law and Rule 10b–5 contained strikingly similar language. Second, the more relaxed notion of scienter found in Florida's Blue Sky Law more closely approximated the scienter requirement of Rule 10b–5 than did the stricter scienter requirement of Florida's fraud remedy. The court noted that the 10b–5 law surrounding the requirement of scienter was in

a state of flux, but that the then current Fifth Circuit authority held some culpability beyond mere negligence to be required. Finally, the court relied upon the similarity of

> the specific remedy sought here—return of the purchase money—and the remedy of recission for which Florida securities law provides a two-year statute. 499 F.2d at 1000.

Each of these factors must be considered as they apply to the instant case.

The language of Georgia's security law certainly parallels that of Rule 10b–5. *See McNeil, supra, Putney, supra,* and *Mooney, supra.* However, this court is convinced that mere semantic similarity should not weigh too heavily in the quest for that state remedy which bears the closest substantive similarity to the remedy provided by Rule 10b–5. Thus, while consideration of *Hudak's* language similarity factor might warrant application of Georgia's security law limitation period, by no means does consideration of that factor mandate or persuasively compel such application.

*Hudak's* second factor involved a comparison in the scienter requirements of Rule 10b–5, Florida's Blue Sky Law and Florida's fraud law. In *Hudak* the court noted that then prevailing Fifth Circuit law required something more than mere negligence before 10b–5 liability may be imposed. Since *Hudak,* the Supreme Court has ruled that knowledge must be shown in 10b–5 actions. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Georgia's fraud law requires not only knowledge but also intent to deceive or cause reliance. Ga.Code Ann. § 105–302; *Shaw v. Cook County Federal Savings & Loan Ass'n,* 139 Ga.App. 419, 228 S.E.2d 326 (1976). Finally, although there are no cases construing the elements of Georgia's security law, Ga.Code Ann. § 97–112, this court thinks it likely that Georgia's law will receive a similar interpretation as that given Rule 10b–5 in *Ernst.* Thus, though all three laws have similar knowledge requirements, because Georgia's fraud remedy contains the additional element of intent to deceive or cause reliance, comparison of the scienter requirements of all three laws strongly supports application of the limitations period found in Georgia's security law.

■ *Hudak's* third and final factor involves comparison of the precise remedy sought with those provided by the contending state laws. Consideration of this factor firmly dictates application here of the limitations period associated with Georgia's fraud law for the present action is brought by allegedly defrauded sellers who have no remedy under Georgia's security law.[1] Georgia's security law is quite strikingly dissimilar to Rule 10b–5 where defrauded sellers' remedies are concerned. On the other hand, defrauded sellers may have a remedy under Georgia's fraud law.

■ Mindful that this court's task is to select that Georgia ". . . remedy which bears the closest substantive resem-

---

1. "Although no Georgia case has reached the question whether a defrauded seller would have a cause of action against the buyer, the language of §§ 97–112 and 97–114 makes clear that only buyers shall have a remedy. The statute is modeled in part after § 12 and § 17 of the federal Securities Act of 1933, which do not provide a private remedy to the seller. *See Herpich v. Wallace,* 430 F.2d 792 (5th Cir. 1970); 25 *Mercer Law Rev.* 46 (1973). Furthermore, § 97–114, the section granting the civil remedy states: 'Any person who violates any provision of section 97–112(a) shall be liable to the person *buying* such security.' (emphasis supplied). This language obviously limits the civil remedy to the buyer of a security.

"A portion of § 97–112(a) is derived from § 10(b) of the Securities and Exchange Act of 1934 and from Rule 10b–5 and these two federal provisions do provide a seller with a private, civil remedy. However, *Ga.Code Ann.* § 97–112(d) contains restricting language which is not found in the federal provisions and the effect of this language is to limit the application of the subsection (d) to prohibited acts by sellers only. That language states that the acts are prohibited 'in connection with the offer or sale of any securities.' *Id.* 'Like section 17 and unlike rule 10b–5, the new provisions (§ 97–112(d)) applies only to offers and sales of securities, thereby maintaining the absence from the Act of any seller's remedies.' Roe, Developments in the Georgia Law of Securities Regulations, 27 *Mercer Law Rev.* 299, 307 (1973)." *Martin v. T.V. Tempo, Inc.,* No. 77–18–Ath (M.D.Ga. Sept. 12, 1977).

blance to Rule 10b–5 and which best effectuates its purpose . . ." *Sargent, supra* at 758, the court chooses Georgia's fraud law. True, two of *Hudak's* three factors dictate choosing Georgia's security law. However, as previously noted, the court finds little guidance in the first factor, semantic similarity. In judging the persuasiveness of the two remaining factors as they apply to actions brought by defrauded sellers, it is important to note that the substance of Rule 10b–5 is to permit defrauded sellers to recover upon showing a knowing omission or misstatement of material information regarding the sale of a security. To recover under Georgia's fraud law, defrauded sellers have an additional hurdle. They must demonstrate intent to deceive or cause reliance. Thus Georgia's fraud law is substantively dissimilar to Rule 10b–5. However, this dissimilarity is not nearly so great as that existing between Rule 10b–5 and Georgia's security law. Under the latter, a defrauded seller could prove knowledge, materiality, intent to deceive, etc. and would still have no entitlement to recovery. Therefore, Georgia's fraud law best effectuates the purpose of Rule 10b–5 since under that law defrauded sellers have some hope of recovery, whereas under Georgia's security law there is no such hope, a characteristic completely at odds with the purpose of Rule 10b–5 as it applies to defrauded sellers and to this case.

Precisely the same conclusion was reached in *Toledo Trust Co. v. Nye*, 392 F.Supp. 484 (N.D.Ohio 1975) where, because Ohio's Blue Sky Law provided no remedy for the allegedly defrauded seller, the court applied the four year limitations period of Ohio's fraud law rather than the two year limit of Ohio's Blue Sky Law. Indeed, the Sixth Circuit subsequently concluded that Ohio's fraud limit should apply even to actions brought by defrauded purchasers who did have a remedy under Ohio's Blue Sky Law. *Nickels v. Koehler Management Corp.*, 541 F.2d 611 (6th Cir. 1976). One significant factor in this selection was the fact that Ohio's Blue Sky Law provided no remedy for the defrauded seller.

The court therefore finds the applicable statute of limitations for 10b–5 actions brought in Georgia by allegedly defrauded sellers to be the four year limit associated with Georgia's fraud remedy. Consequently, plaintiff's present 10b–5 action is not time barred.

### Res Judicata and Collateral Estoppel

W. D. Kirk, Jr. and Hardaway are presently involved in this court in other litigation over the same controversy. In *Kirk v. The Hardaway Co.*, No. 75–68–Col (M.D.Ga. Sept. 16, 1976), Judge J. Robert Elliott granted JNOV against W. D. Kirk, Jr. Hardaway now argues that Judge Elliott's decision bars plaintiffs under the doctrine of res judicata and collateral estoppel. Citing *Blonder-Tongue Laboratories v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), First National, executor of the estate of R. H. Wright, Jr., contends that Judge Elliott's opinion in favor of Hardaway estops plaintiffs from proceeding against the estate of R. H. Wright, Jr. Since Gertrude S. Kirk and Richard R. Kirk were neither parties to nor in privity with any parties to the prior *Kirk v. Hardaway Co., supra*, action, they are not now estopped. The court will now consider estoppel of W. D. Kirk, Jr., first as to Hardaway, and second as to First National.

■ Judge Elliott's opinion indicates that W. D. Kirk, Jr. sold his shares of Wright Contracting Company to Hardaway in two transactions, one on September 1, 1971 and the other in December 1971, that Hardaway obtained information the day before the first transaction which Mr. Kirk alleged to be material, that Hardaway did not disclose this information prior to either transaction, and that Kirk's suit sought recission of and punitive damages because of the second transaction, the one in December 1971. W. D. Kirk, Jr. relied only upon a state law theory of fraud, the key issues being materiality of the undisclosed information and intent to defraud. Judge Elliott ruled in favor of Hardaway on both of these issues. There were no 10b–5 claims raised. The doctrine of res judicata surely bars W. D.

Kirk, Jr.'s attempt here to relitigate his claim of state law fraud. The only question remaining is whether this court may hear W. D. Kirk, Jr.'s claim against Hardaway based upon Rule 10b–5.

■ W. D. Kirk, Jr. could easily have raised his 10b–5 claim during the Columbus action. That 10b–5 claim arises from the same operative facts and alleges essentially the same misconduct as does the already litigated state fraud claim. Although compulsory joinder of plaintiffs' claims is not required by the Federal Rules of Civil Procedure, public policy and sound authority dictate that plaintiffs will not be permitted to split claims, thereby generating piecemeal litigation burdening both defendants and the courts. *See Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.*, 295 F.2d 362 (5th Cir. 1961) in which the plaintiff brought simultaneous but separate suits in the district court, alleging in one that defendant breached its contract to sell shaving products to plaintiff and in the other that defendant's refusal to deal was in violation of federal antitrust laws. The contract action went to trial first, and Gillette won. The trial court then granted summary judgment for Gillette in the second action and was affirmed by the Fifth Circuit on the doctrine of res judicata.

It is settled, contrary to appellant's contention, that a litigant may not split his claim and have two trials on the same alleged breach of duty. Basically, Norman claimed the same "right" in both suits—the right to purchase Gillette products direct from Gillette. The only wrong charged against Gillette was its refusal to continue to deal with Norman. We held in the contract case that Norman had not shown that Gillette wrongfully refused to deal with it. There, appellant relied upon the breach of Gillette's supposed contractual relationship as the basis of its claim. Here, appellant relies upon the breach of the anti-trust laws as the basis for the alleged breach. But there was one breach and one only and appellant has had its day in court and has lost. It cannot litigate this same breach again. 295 F.2d at 363–4 (citations omitted)

*See also, Carr v. United States*, 507 F.2d 191 (5th Cir. 1975) and *Woods Exploration and Pro. Co. v. Aluminum Co. of Amer.*, 438 F.2d 1286 (5th Cir. 1971). It is apparent that this authority dictates estoppel of W. D. Kirk, Jr. in the present case as to defendant Hardaway. First National's estoppel plea must now be considered.

■ *Blonder-Tongue, supra*, held that where a plaintiff has had a full and fair opportunity to litigate a particular claim against one defendant and has lost, that loss operates to collaterally estop the plaintiff from raising the same claim in a subsequent litigation against a different defendant. *Blonder-Tongue* is clear authority that W. D. Kirk, Jr. is estopped here to assert a state law fraud claim against First National for he has already lost precisely the same claim in the *Hardaway* decision on the issue of materiality, an issue whose standards and proof are not dependent upon plaintiff's choice of defendants.

■ Since the *Hardaway* decision dealt only with a state law fraud claim, First National presents a closer question with its contention that *Hardaway* bars W. D. Kirk, Jr.'s present Rule 10b–5 claim in addition to the state law fraud claim. Materiality is an element necessary to both claims. The applicable materiality standard in Rule 10b–5 cases was recently established to be whether there is a substantial likelihood that a reasonable shareholder would consider the omitted information important in deciding whether to sell. *Woolf v. S. D. Cohn & Co.*, 546 F.2d 1252 (5th Cir. 1977). *See also TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1971). This court is unaware of Georgia decisions specifically describing the materiality standard under Georgia's fraud law. However, so far as materiality of information omitted from life insurance applications is concerned, material information is that which would influence a prudent investor in fixing the amount of premiums or in determining whether or not to accept the risk. *Vaughn v. National Life & Accident Ins. Co.*, 189 Ga. 121, 5 S.E.2d 238 (1939). Absent Georgia authority to the contrary, this court

finds the preceding standard to be that which Georgia employs for the element of materiality in Georgia's fraud law. Further, the court finds this materiality standard to be virtually indistinguishable from the materiality standard employed in Rule 10b-5 claims. Indeed, Judge Elliott's decision clearly intertwines Georgia's and Rule 10b-5's materiality standards and concludes that W. D. Kirk, Jr. failed as a matter of law to show that knowledge of the alleged misappropriations would have been material to his decision to sell. Since W. D. Kirk, Jr. has already had a full and fair opportunity to establish the element of materiality and has lost, this court, applying *Blonder-Tongue*, will not rehear him on the same issue. Accordingly, summary judgment is granted in favor of First National and against W. D. Kirk, Jr. as to his Rule 10b-5 and state law fraud claims.

### Count One

Plaintiffs, not presently shareholders in Wright Contracting Company, concededly have no standing to bring a derivative action. Rather, in their count one, plaintiffs bring a direct action against the estate of Robert H. Wright, Jr. for causing diminution in the value of their previously owned shares. Plaintiffs contend that Georgia law permits recovery by former shareholders against directors whose breach of fiduciary duties indirectly caused a reduction in the selling price received by the former shareholders for their shares where the shareholders did not discover the breach until after disposing of their shares. As authority, plaintiffs cite *Pickett v. Paine*, 230 Ga. 786, 199 S.E.2d 223 (1973) and *Watson v. Button*, 235 F.2d 235 (9th Cir. 1956).

In *Pickett*, the sole minority shareholder sued the majority shareholder for alleged breach of fiduciary duties. Apparently, plaintiff in part sought direct recovery, rather than the indirect (corporate) recovery normally associated with derivative suits. The court stated that

> [a]s a general rule, a claim for misappropriation and waste of corporate assets by a director or officer of a corporation belongs to the corporation and not to its shareholders, and except in various rare circumstances, not applicable here, complaining shareholders will not be allowed to recover directly. See Kaplan's Nadler, Georgia Corporation Law, Sections 10–18 and 11–16 (1971). See also Comments: Corporations—Shareholders' Derivative and Direct Actions—Individual Recovery, 35 N.C.L.Rev. 279 (1957). 230 Ga. at 790, 199 S.E.2d at 227.

Both of the cited authorities espouse the theory of *Watson v. Button, supra*. Indeed, the North Carolina law review comment discusses *Watson* as a significant and approvable recent development. Consequently, there is little doubt that the *Pickett* court had the *Watson* fact pattern in mind when referring to "rare circumstances" when shareholders could recover directly from officers or directors for breaches of fiduciary duties.

In *Watson*, plaintiff and defendant were both former 50% shareholders in the same corporation. Subsequent to sale of their stock, plaintiff allegedly discovered misappropriations by the defendant which had reduced the price plaintiff had received for his shares. The trial court concluded that Oregon law allowed a cause of action on those facts, with plaintiff permitted to recover directly from the defendant. In affirming, the Ninth Circuit observed that as a general rule, any cause of action for misappropriation belonged to the corporation, not the shareholder. However, it concluded that the reasons supporting the general rule were not present: there could be no multiplicity of suits since there were only two shareholders, both involved in the litigation; creditors could not be prejudiced because plaintiff and defendant had agreed to be jointly liable for corporate debts; since there was only one injured shareholder, there was no concern that direct recovery by that shareholder would prejudice the rights of other injured shareholders; and since the plaintiff was no longer a shareholder, recovery by the corporation would not compensate the true injured party.

Here also, recovery by the corporation would not benefit the injured parties, former shareholders who received less for their shares than they would have received had there been no breach. In any event, the corporation can no longer recover for the misappropriation. Prior to the end of 1972 all shares of Wright Co. had changed hands, and the company became the solely owned subsidiary of Hardaway. In Georgia, a derivative action may be maintained only by those who were shareholders at the time of the transaction which gives rise to complaint. Ga.Code Ann. § 22–615. Therefore, no present shareholders of Wright Co. may bring a derivative action which might result in corporate recovery. Also, by the end of 1971 Wright Co. and its parent, Hardaway, had full notice of the facts surrounding the alleged misappropriation. Therefore, any direct action by the corporation against its former officer and director, Robert H. Wright, Jr., is time barred. Ga. Code Ann. § 22–714(c).

It may be contended that allowing the present plaintiffs to directly recover would prejudice the rights of creditors since, unlike the facts of *Watson*, here, there is no indemnity agreement among shareholders for the benefit of creditors. But creditors of the corporation are prejudiced only insofar as allowing recovery by the plaintiffs would somehow prejudice the possibility of corporate recovery. Since, as has just been stated, the present corporation cannot recover, creditors here cannot be prejudiced, just as creditors in *Watson* could not be prejudiced.

Finally, it may be contended that Georgia would not approve a *Watson*-type direct recovery in the instant case because of the existence of other injured former shareholders who are not party to this litigation. In *Watson*, there were no other injured shareholders, and thus *Watson* is distinguishable from the instant case. However, this court is convinced that Georgia's courts, squarely presented with the equity of plaintiffs' plea, would closely scrutinize the substance of the just-mentioned distinguishing factor to determine whether that sole distinguishing factor persuasively mandates rejection of a *Watson*-type direct recovery in this case.

The substantive concerns caused by the presence of other injured former shareholders are that a *Watson*-type theory of recovery would generate a multiplicity of suits and would prejudice other former shareholders by diminishing the assets available for compensation of their injuries. However, both of these concerns are present in any class action type situation where less than all injured parties request relief, and relief is not denied because of concern over multiplicity and diminution of assets. Indeed, far less drastic than denying relief would be to require plaintiffs in class action type situations to attempt joinder of all other injured parties. Yet Georgia law does not even go this far. Consequently, since the concerns for multiplicity and diminution of assets do not prompt Georgia to require plaintiffs in class action type situations to attempt joinder of similarly situated injured parties, a mildly burdensome requirement, this court can hardly conclude that those same concerns would prompt Georgia to reject plaintiffs' equitable theory of relief, a terribly burdensome result. Therefore, the court finds that the facts as alleged under plaintiffs' count one are indistinguishable from *Watson* so far as substantive factors are concerned and that Georgia law does permit recovery should those alleged facts be established as true.

*Conclusion*

For the reasons hereinbefore stated, defendants' motions for summary judgment filed April 15, 1977 are denied as to plaintiffs Gertrude S. Kirk and Richard R. Kirk. On the other hand, summary judgment is granted in favor of Hardaway and against W. D. Kirk, Jr. on all counts alleged, and summary judgment is granted in favor of First National and against W. D. Kirk, Jr. on all counts alleged except count one.