222 So.2d 282 (1969)
Gerald G. MATTHEWS, Appellant,
v.
Olive M. MATTHEWS, Appellee.
No. 68-402.
District Court of Appeal of Florida. Second District.
April 25, 1969.
Rehearing Denied May 16, 1969.
*283 David Linn, of White, Phipps, Linn, Furnell & Mahorner, Tallahassee, and Bacon, Hanley & Piper, St. Petersburg, for appellant.
H. Rex Owen, of Bussey, Simmons & Owen, St. Petersburg, for appellee.
PIERCE, Judge.
In this case plaintiff in the lower Court, Gerald G. Matthews, appeals from a final summary judgment in favor of defendant therein, Olive M. Matthews, and from a supplemental order taxing as costs a fee award to the guardian ad litem.
A brief excursion into the background chronology of this unfortunate 14 year litigation between brother and sister will afford a keener insight into the relatively simple issues before this Court. In 1955 Gerald filed suit in equity in the Pinellas County Circuit Court against his sister Olive, his brother William, and others as trustees of the Alliance Investment Corporation, the latter a kind of family corporation formed many years before. The main thrust of the suit was against Olive whom he charged had transferred, continuously and systematically over a long period of years, assets out of Alliance to her own use and benefit without his knowledge, and who finally, without notice to him, had caused the corporation to be dissolved. In the suit he prayed that a previous oral contract between him and Olive around 1926, under which he was to have a one-fourth interest in the assets of the corporation, be recognized and enforced; that he have an accounting; that a constructive trust be declared; that there be a "cancellation of the dissolution" of the corporation; that a receiver be appointed; and for general relief. The issues were joined by the defendants and a trial on the merits ensued. The Court entered final decree, finding the equities to be with the defendants and against Gerald and his complaint was thereupon dismissed with prejudice. No appeal was taken and the decree became binding and absolute.
In 1957 Gerald filed a suit at law against Olive in the same Circuit Court, alleging practically the same identical facts set forth in his 1955 equity suit. In the law case he sought a monetary recovery against Olive for the tort of deceit, for relief upon quantum meruit and quantum valebant, and for compensatory and punitive damages. There followed the usual pleading skirmishes but the main defenses of Olive finally emerged as res adjudicata by virtue of the entry of final decree in the 1955 equity suit and the defense of election of remedies because of his prosecution of the earlier suit in equity. The defenses were later upheld by the trial Court as a matter of law and summary final judgment was entered in favor of Olive. Gerald then appealed *284 to this 2nd District Court, and on August 2, 1961, this Court reversed, holding the original equity suit constituted no legal impediment to the filing of the law suit. Matthews v. Matthews, Fla.App. 1961, 133 So.2d 91.
The case then went back to the Circuit Court and Gerald resumed prosecution of his action at law.
As before stated, this suit at law sought a money judgment for fraud and deceit, upon quantum meruit[1], and upon quantum valebant[2]. Back in the trial Court, the usual sparring on pleadings, motions, interrogatories, depositions, etc., continued. On January 23, 1963, Olive was adjudged incompetent and a guardian ad litem appointed for her. In due course the guardian ad litem filed motion for summary final judgment, contending that under the admitted facts before the Court Gerald was not entitled to recover, either for fraud, quantum meruit or quantum valebant, because (a) the three year statute of limitations had run against Gerald's claims, (b) the action was barred by the statute of frauds, and (c) no actionable fraud had been shown. Upon hearing, the Court heard the motion and entered summary final judgment upon all three grounds, which judgment Gerald has appealed to this Court. Upon careful examination of the voluminous record brought here, and giving due consideration to the excellent briefs and oral arguments of the parties, we are impelled to agree with the lower Court and affirm.

(a) Statute of Limitations

The action for damages based upon fraud and deceit is governed by F.S. § 95.11(5) (d) F.S.A., which provides a three year statute of limitations for "[a]n action for relief on the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."
The law action was instituted on October 2, 1957. Therefore, if Gerald had discovered facts "constituting the fraud" prior to October 2, 1954, the instant action was barred. Halstead v. Florence Citrus Growers' Ass'n, 1932, 104 Fla. 21, 139 So. 132; Watson v. Jones, 1899, 41 Fla. 241, 25 So. 678; Lucom v. Atlantic Nat. Bank of West Palm Beach, Fla., C.A.5, Fla. 1965, 354 F.2d 51, cert. den. 385 U.S. 898, 87 S.Ct. 199, 17 L.Ed.2d 130; E.J. Evans Co. v. Ohio State Life Ins. Co., Fla.App. 1962, 144 So.2d 833.
And this three year limitation must be strictly construed against the party bringing suit, to such extent that the words "discovery * * * of the facts" used in said § 95.11(5) (d) "must be defined by [an] objective and not subjective standard and means knowledge of facts which would have been discovered in exercise of due diligence"; also that the "question of whether plaintiff should have discovered [the] basis for his cause of action for fraud was one of law to be determined by [the] court". Azalea Meats, Inc. v. Muscat, D.C.Fla. 1965, 246 F. Supp. 780 (reversed on other grounds, 5 Cir., 386 F.2d 5).
So therefore, if the alleged basis for fraud was either discovered by Gerald, or when by exercise of reasonable diligence he should have discovered it, on or prior to October 2, 1954, the statute of limitations would bar the action.
The record here conclusively shows that Gerald "discovered" whatever fraud existed in or before June of 1953, for it was during that month that he wrote to both Olive and her attorney demanding his "share of the corporation" under threat of suit. The demand was refused, but he still did nothing until December 10, 1954, when he instituted the equity action in the Circuit Court, which action terminated adversely to him by entry of final decree *285 which became absolute by passage of time and failure to appeal.
Alliance, the family holding corporation, and which was actually referred to as "the family jackpot", was formed around 1926 as a result of an oral agreement between Gerald and his sister Olive and their uncle, Frank Pulver, to transfer their individual assets to it and at some indefinite time in the future "when the market would be right", to divide the corporate assets. Gerald was to ultimately receive twenty-five percent of the assets. Nominal shares of stock were first issued and were endorsed and turned over to Olive for safe-keeping, the shares in no way representing the actual value of the assets turned over by the individuals.
Over a period of time Gerald transferred property to the corporation and performed services for it. In the 1930's or 1940's (the exact time is undeterminable), Gerald became suspicious of Frank and his sister Olive and insisted upon examining Alliance's books. Such examination revealed, according to his own testimony, that both Olive and their uncle claimed to have transferred assets to the corporation which Gerald himself owned.  He took no action at that time.
In 1948 Gerald determined that it was the proper time for the corporate assets to be divided, and he requested Olive to do so, but she refused. And about this same time Gerald came to the conclusion that his sister and uncle were "conniving" to deprive him of his "rightful" share of the family corporation.  But he still took no action.
In 1949 or shortly thereafter, he distinctly noticed that Olive's attitude toward him was changing adversely, and that she had come under the "poisonous Dillon influence", referring to her brother-in-law, Ralph Dillon.  Gerald still took no action.
In April, 1953, Gerald visited her home and demanded orally that she turn over to him his one-fourth interest in the corporation. She refused his demand.  But he still took no action.
During December, 1953, acting on a "hint" from an accountant, Gerald inspected the County public records at Clearwater and learned of a blanket transfer of all assets of the corporation to Olive. (There was some attempt to make the time of this "courthouse trip" to be in 1954, but Gerald fixed the time in his own testimony as "about December 26 of 1953").  Still Gerald took no action.
Gerald contends that the statute of limitations did not begin to run until the Fall of 1954, when he said he first had knowledge of the dissolution of the corporation which, he contends further, constituted the fraud. The fallacy of this argument, however, is that the fraud if any consisted not in dissolving the corporation but in converting his assets. And he had knowledge of such conversion, if any, long before the Fall of 1954, because it was on December 26, 1953, that he found out from examining the public records himself that all the remaining assets of Alliance had been transferred to Olive. Thus, the three year statute of limitations had already run against the fraud action when the instant law suit was filed on October 2, 1957.
As to quantum meruit and quantum valebant, these actions are also ruled by § 95.11(5) (e) which provides a three year limitation period upon "an action upon a contract, obligation or liability not founded upon an instrument of writing * * *". Gerald's claim under quantum meruit is for the reasonable value of the services he allegedly performed for the corporation. Quantum valebant is for the reasonable value of the properties he says went into the corporation. Historically, they were two of the common counts in general assumpsit, were largely interchangeable, and have now become practically obsolete. See 73 C.J.S. p. 1269; 7 C.J.S. Assumpsit, Action of § 2, p. 109. But it is clear, from the plain wording of the statute, that the *286 actions are subject to the three year limitation period.
No property had been transferred or services allegedly rendered after 1948. Gerald in his amended complaint went into detail as to all such property transferred and services rendered, and in his deposition he was questioned at length as to the time element of each item of such assets and services. The three year statute had run against everything.
Gerald again contends that the statute began to run when he discovered the dissolution of the corporation. However, in quantum meruit and quantum valebant, the cause of action accrued when the services have been performed or the property transferred. This was many years before the statute began to run in the instant case.
As to the Statute of Frauds, F.S. § 725.01 F.S.A., provides inter alia that "No action shall be brought whereby to charge * * * any person * * * upon any agreement that is not to be performed within the space of one year from the making thereof" unless it is in writing. Olive argues that if there was an agreement between the parties in 1926 it was oral, not written, and was never intended to be performed within one year, and therefore it contravenes the aforesaid Statute of Frauds. The trial Court in its final summary judgment agreed. And while not necessary to decision here, we likewise agree.
Lastly, on the merits, it is contended on behalf of Olive that, as a matter of law, there has been no fraud perpetrated upon Gerald by Olive. The lower Court so found. We prefer to pretermit discussion, much less express an opinion, upon the point. We have hereinbefore held that the law action was not begun by Gerald until after his claim had been barred by the statute of limitations and Statute of Frauds, as was properly held by the lower Court. The parties have been battling in the courts now for almost a decade and a half, and we prefer to leave unsaid any views on our part as to whether fraud did or did not exist as a matter of law, between brother and sister, unless it is perforce necessary, which here it is not.
On the question of the action of the trial Court in decreeing that the fee of the guardian ad litem for Olive be taxed as costs, we think it was a discretionary matter for the trial Judge to decide. From the record we cannot say there was any abuse of that discretion. This identical point was so held by this 2nd District Court in Matthews v. Matthews, Fla.App. 1965, 177 So.2d 497, wherein this same incompetent defendant Olive was sued by another brother, William R. Matthews as administrator of the estate of their mother, Elizabeth Charity Matthews, in a suit also alleging fraud.
It may understandably well be that in the case sub judice Gerald is bitterly bemoaning a system of laws that he feels is figuratively shutting its doors upon him and refusing to give him redress or even a trial for what he considers to have been a grievous wrong inflicted upon him. But if he had a meritorious case he has only himself to blame. If he had a good case at law he should have filed the instant suit before it was legally barred by the statute of limitations or statute of frauds. If he had a good suit in equity then the trial Court was wrong when it entered its final decree against him in the 1955 suit and it was his duty to appeal that decree, rather than to abandon the suit and let the decree become absolute. If he had no case either at law or equity he has no reason to complain.
The final summary judgment and the supplemental order taxing costs are severally affirmed.
Affirmed.
HOBSON, A.C.J., and MANN, J., concur.
NOTES
[1] Liberally translated: "As much as he deserved".
[2] Liberally translated: "As much as they were worth".