## W. R. BEAN & SON, INC.

v.

## GRAPHIC ARTS INTERNATIONAL UNION and Graphic Arts International Union, Local 96B.

### Civ. A. No. C–75–306A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 26, 1977.

William M. Pate, Mitchell, Clarke, Pate & Anderson, Atlanta, Ga., for plaintiff.

Alford Wall, Wall, Campbell & Fuller, Roswell, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This is an action brought for recovery of damages sustained by plaintiff by reason of defendants' alleged unfair labor practices under section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. Section 158(b)(4). Jurisdiction is predicated upon section 303(a) of the Labor Management Relations Act, 29 U.S.C. Section 187(a). Presently pending are plaintiff's motion for summary judgment on the primary claim, defendants' motions for summary judgment on plaintiff's claim, plaintiff's motion for summary judgment on defendant local union's counterclaim, defendant International's motion for a protective order, and plaintiff's request for sanctions.

Plaintiff W. R. Bean & Son, Inc. operates a printing business in Georgia. On July 24, 1973, a strike was called against plaintiff by Graphic Arts International Union, Local 96B.

At the time of the strike, plaintiff printed "The American Rifleman", a monthly publication of the National Rifle Association. (N.R.A.) This journal is distributed to each of the N.R.A.'s 1,000,000 members. Plaintiff also printed a regional edition of Time Magazine.

During the latter part of 1973 and for most of 1974, agents of the defendant unions directed a series of oral and written communications to the N.R.A. concerning the labor dispute with the plaintiff. Many of these communications were written by Truitt L. Crunkleton, president of the defendant local and a vice president of the International.

For seven days in January, September and December, 1974, the national headquarters of the N.R.A. were picketed with signs asserting:

NATIONAL RIFLE
ASSOCIATION
DOES BUSINESS WITH
W. R. BEAN & SON
FOUND GUILTY OF
UNFAIR LABOR
PRACTICES

The entrances to the N.R.A. offices and museum were picketed. Picketers included Mr. Crunkleton, the executive vice president of the International, two International representatives and a member of the International's executive council.

On December 3, 1974, the N.R.A. gave W. R. Bean & Son 120 days notice of cancellation of the printing contract. Plaintiff terminated production of the magazine on April 1, 1975. A complaint was filed against the local and international bodies of Graphic Arts International Union on February 2, 1975. Plaintiff alleged illegal secondary pressures under 29 U.S.C. Section 158(b)(4).

1. The plaintiff has filed for summary judgment on the issue of defendants' liability under Section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. Section 158(b)(4). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only where:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In application, this rule limits the court's function to a determination whether there is an issue of fact to be tried. The court does not decide issues of fact on a motion for summary judgment and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir. 1969); *Toebelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016 (3d Cir. 1942).

The burden placed by this rule on a movant for summary judgment effectively forestalls most, if not all, summary judgments for employers on the issues in dispute here. Under the requirements of 29 U.S.C. Section 158(b)(4)(ii)(B) appropriate here, it is an unfair labor practice for a labor organization to threaten, coerce, or restrain any person engaged in commerce where an object thereof is either a) forcing any person to cease using, selling or otherwise dealing in the products of any other producer or b) forcing any person to cease doing business with any other person. The crucial determination is whether "an object" of the labor activity is one of these proscribed purposes. *International Brotherhood of Electrical Workers v. N.L.R.B.*, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951). The question of objectives in every case is one of fact. *Roywood Corp. v. Radio Broadcast Technicians Local No. 1264*, 290 F.Supp. 1008 (S.D.Ala.1968).

Despite plaintiff's assertions that "an object" of defendants' activities with regard to the National Rifle Association necessarily entailed a proscribed purpose, defendants must be given the benefit of all doubts. The sole object of defendants' activities may have been to inform interested parties of the existence of the labor dispute, and that possibility provides a sufficient grounds for denial of the plaintiff's motion for summary judgment.

2. Defendant unions have moved for a summary judgment on the issue of their liability under 29 U.S.C. Section 158(b)(4). These motions must also be denied.

The unions' burden on a summary judgment motion, like that of the plaintiff, is to establish that there is no material issue of fact and that they are entitled to judgment as a matter of law. Neither of these requirements has been established.

Section 8(b)(4) of the National Labor Relations Act implements the dual Congressional objectives of preserving the rights of unions to bring pressure upon offending employers in primary labor disputes while shielding unoffending secondary employers from pressures in controversies not their own. *Local 761 v. N.L.R.B.*, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961).

"It's purpose, stated broadly, is to prevent coercive economic pressures against neutral secondary employers being thrown into the scales in the resolution of the dispute between union and primary employer." *Superior Derrick Corporation v. N.L.R.B.*, 273 F.2d 891, 893, (5th Cir. 1960).

The distinction between protected and unprotected labor pressures turns upon the unions' intent in their activities directed against secondary parties.

■ In *N.L.R.B. v. Local 825, Operating Engineers*, 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398 (1971), the Supreme Court held that an objective less than a complete termination of business will violate the "cease doing business" test of 8(b)(4)(ii)(B) of the National Labor Relations Act. The objective of the unions was held to be the determinative factor in that case. Furthermore, "[i]t appears that the court intends the 'limited goal' standard to mean that a union cannot require a neutral employer to use the leverage of business relationship with a primary employer to force that employer to accede to union demands on pain of a union caused termination of business relations between the employers if the primary one does not comply." 71 Col.L.Rev. 1077, 1085 (1971).

The leading decision on the question of secondary boycotts is *N.L.R.B. v. Fruit and Vegetable Packers*, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964), generally referred to as "Tree Fruits". In *Tree Fruits*, it was recognized that Section 8(b)(4) did not conclusively demonstrate a Congressional purpose of banning all peaceful picketing at secondary sites. Picketing which persuades customers of a secondary employer to stop all trading with that secondary party was held to have been barred. Other non-picketing publicity toward that end was permitted, however.

*Tree Fruits* is inapplicable here for several reasons. It cannot be stated as a matter of law that the picketing of the National Rifle Association headquarters was confined to persuading NRA members or the public to cease using products produced by the primary employer, W. R. Bean. That is a question of fact inappropriate for determination on a motion for summary judgment. Furthermore, the *Tree Fruits* doctrine is inapplicable where the struck product is an integral part of the retailer's entire offering. *Honolulu Typographical Union No. 37 v. N.L.R.B.*, 131 U.S.App.D.C. 1, 401 F.2d 952 (1968). The Supreme Court in *Tree Fruits* characterized "picketing which persuades the customers of a secondary employer to stop all trading with him", 377 U.S. at 71, 84 S.Ct. at 1070, as one of the evils barred by Section 8(b)(4)(ii)(B).

If the union was appealing to N.R.A. members to avoid all W. R. Bean produced products which were distributed by the N.R.A., this would support a finding that, like Honolulu Typographical, this necessarily entailed a boycott of the secondary party. At the time of the picketing, W. R. Bean printed "The American Rifleman", the N.R.A.'s monthly publication which was distributed to each of its members. It could be found that to avoid the W. R. Bean printed publication would require a boycott of the N.R.A. itself, a result clearly in violation of Section 8(b)(4).

■ The exception to 8(b)(4) for publicity truthfully advising the public that the secondary party distributes products produced by an employer with whom the union has a labor dispute is inapplicable. It could be found that the signs worn outside N.R.A. headquarters did not so advise the public. Furthermore, picketing is expressly excluded from this section's limitations on 8(b)(4). The activity here involved was unquestionably picketing. *N.L.R.B. v. Local 254, Building Service Employees*, 376 F.2d 131 (1st Cir. 1967). It must be held that the defendants have violated Section 8(b)(4) if the picketing had as one of its objectives a purpose which is prohibited by that section. *Brown Transport Corporation v. N.L.R.B.*, 334 F.2d 30 (5th Cir. 1964); *N.L.R.B. v. Truck Drivers & Helpers*, 228 F.2d 791 (5th Cir. 1956). "If any object of the picketing is to subject the secondary employer to forbidden pressure then the picketing is illegal." *Superior Derrick Corporation v. N.L.*

*R.B.*, 273 F.2d 891, 896 (5th Cir. 1960). That determination of object is a question of fact.

■ 3. As an alternative ground for their cross motion for summary judgment, the defendant International asserts that it may not be held liable for acts of the local union. The facts of this case, however, would support a finding that the acts of the International and her agents constituted participation and ratification of the labor activities in question here. A union's responsibility is based upon the acts of its agents. No actual authority for the agent's activities is required for union responsibility so long as those agents are acting within the scope of their apparent authority. *United States Steel Corp. v. United Mine Workers of America*, 519 F.2d 1249 (5th Cir. 1975); *Vulcan Materials Co. v. United Steelworkers of America*, 430 F.2d 446 (5th Cir. 1970).

4. The defendant local union has filed a counterclaim seeking compensatory and punitive damages for alleged activities of intimidation and violence against members of the defendant union. Plaintiff has sought dismissal of this claim.

■ The defendant has made several allegations of intimidation and violence involving several separate incidents. It is not clear from the pleadings or in answers to interrogatories that any of these entail violations of federal labor law. The defendant's reliance upon *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), as authority for federal jurisdiction supports the view that all of the allegations entail alleged violations of state law.

*Gibbs* states that a claim arising under the laws of the United States will support a claim arising under state laws where those claims "derive from a common nucleus of operative fact[s]". Claims of secondary boycotts, malicious abuse of process, employee harassment and the other enumerated actions do not involve a common nucleus of operative facts such as to warrant the discretionary application of the doctrine of

pendant jurisdiction. *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974). Defendants' counterclaim is dismissed due to lack of jurisdiction.

5. Defendants have moved for a protective order concerning an interrogatory presented by the plaintiff. Plaintiff has sought sanctions against the defendant for failure to answer that interrogatory. The interrogatory reads:

> State the aggregate amount of strike benefits paid by Graphic Arts International Union to members of defendant local and other participants in the strike of defendant local against plaintiff, in each of the years 1973, 1974 and 1975.

The interrogatory in question was served upon the defendant in October, 1975. Defendants objected to this question. On July 19, 1976, Circuit Judge James C. Hill ordered defendants to answer the interrogatory within twenty days. Four extensions of time for answering were granted, the last of which expired on October 1, 1976. Defendants did not seek a protective order until after plaintiff filed his motion for sanctions.

■ Under these circumstances, it is inappropriate to request a protective order at this time. Defendants have been ordered by this court to answer the interrogatory. Conclusory statements are insufficient to justify either the delay or the award of a protective order. *White v. Wirtz*, 402 F.2d 145 (10th Cir. 1968). It is hereby ordered that the defendants answer the interrogatory set out above within ten (10) days of the filing date of this order.

Plaintiff is awarded his attorney's fees relevant to the cost of securing an answer to this interrogatory. Plaintiff may make a showing of those fees by affidavit after this matter is concluded.

6. Accordingly, plaintiff's motion for summary judgment on the issue of liability is denied. Defendants' motion for summary judgment on the issue of liability is denied. Plaintiff's motion for dismissal of the counterclaim is granted. Defendants' motion for protective order is denied. Plaintiff's motion for sanctions is granted.

SO ORDERED, this 26th day of August, 1977.