**C.A. CAVENDES, SOCIEDAD FINANCIERA, a Venezuelan corporation, Plaintiff,**

v.

**FLORIDA NATIONAL BANKS OF FLORIDA, INC., a Florida corporation, Defendant.**

**No. 82–151–Civ–J–M.**

United States District Court, M.D. Florida, Jacksonville Division.

April 9, 1982.

Rutledge R. Liles, Jacksonville, Fla., Gerald Cope, Miami, Fla., for plaintiff.

Frederick H. Kent, Jr., and William L. Durden, Jacksonville, Fla., Edwin E. McAmis, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MELTON, District Judge.

On February 10, 1982, plaintiff C.A. Cavendes, Sociedad Financiera ("Cavendes") filed this action, naming as defendant Florida National Banks of Florida, Inc. ("Florida National"). The gravamen of the amended complaint is two-fold.[1] First, Cavendes contends that Florida National distributed false and misleading proxy materials in connection with a special shareholders' meeting. This conduct, Cavendes asserts, violated Section 14(a) of the Securities Exchange Act of 1934 ("the Act")[2] and the SEC's proxy rules promulgated under that section of the Act.[3] Second, Cavendes maintains that Florida National conducted the special shareholders' meeting in violation of its own bylaws, the Florida Corporate Code,

and a contractual agreement between the parties. Cavendes seeks specific performance of the contractual agreement, appointment of a special master to preside over a reconvened meeting, and injunctive relief.

By order dated March 29, 1982, the Court notified the parties that, in the interests of justice and pursuant to Fed.R.Civ.P. 65(a)(2), the trial on the merits of this action would be consolidated with a hearing on plaintiff Cavendes' Motion for Preliminary Injunction and defendant Florida National's Motion for Judgment on the Pleadings. Thereafter, on April 6, 1982, a final hearing was held on Cavendes' request for relief and Florida National's Motion for Judgment on the Pleadings. The issues before the Court were comprehensively briefed and argued.

The Court having carefully reviewed and considered the totality of the record herein makes its findings of fact and conclusions of law on the issues set forth above.

## FINDINGS OF FACT

1. Cavendes is a Venezuelan financial corporation which has its principal place of business in Caracas, Venezuela. Cavendes is the record owner of 748,700 common shares of Florida National, which constitutes approximately 9.9% of the shares presently outstanding.

2. Florida National is a Florida corporation with its principal place of business in Jacksonville, Florida. Florida National is a bank holding company which owns national banks and state-chartered banks at various locations throughout Florida.

3. On April 17, 1981, Florida National entered into a merger agreement with the Alliance Corporation, a one-bank holding company with its principal place of business in Jacksonville, Florida.

4. On October 28, 1981, Cavendes commenced a proxy solicitation, and on November 2, 1981, Cavendes and one other share-

---

1. The Court, by ore tenus order at a February 11, 1982, emergency hearing, granted Cavendes leave to file an amended complaint.

2. 15 U.S.C. § 78n(a) (1976).

3. 17 C.F.R. § 240.14a–9 (1981).

holder called a special meeting of the shareholders of Florida National. The call for the shareholders' meeting was made pursuant to the Florida Corporate Code, § 607.-084(3)(b), Florida Statutes, which permits the shareholders of ten percent or more of the common shares of a corporation to call a shareholders' meeting.

5. The stated purpose of the shareholders' meeting was to consider whether the shareholders of Florida National should direct the Florida National Board of Directors to submit the Florida National-Alliance merger to a vote of the shareholders. Cavendes set the meeting date for November 24, 1981. Florida National instead desired to hold the special meeting on December 17, 1981.

6. Cavendes and Florida National engaged in negotiations regarding the scheduling and conduct of the special shareholders' meeting. Eventually, the parties agreed upon a meeting date of December 17, 1981. It was Cavendes' position that Cavendes and Florida National should co-chair the meeting. Cavendes and Florida National ultimately agreed in writing on a set of procedures, which included the following two pertinent provisions:

4. The chairman of the meeting shall be chosen by Florida National and such person shall conduct the meeting in a manner that is fair to the parties and in accordance with Robert's Rules of Order.

5. The parties shall be given, as nearly as possible, equal time for presentations at the meeting, and speakers from the floor will be asked to alternate between 'pro' and 'con' on the resolutions to be presented.

7. The December 17, 1981, meeting was adjourned to a later date by written agreement of Cavendes and Florida National.

8. In December 1981, Cavendes, Florida National, and the Alliance Corporation agreed in writing on a further adjournment of the meeting to February 9, 1982. The agreement provided, in pertinent part:

7. Florida National will not close the proposed merger of Alliance Corporation until eight (8) days after the date of the shareholders' meeting. Neither Florida National nor the Committee [Cavendes] waives any other rights either may have with regard to the Alliance merger.

9. On February 9, 1982, the shareholders' meeting was convened in Jacksonville, Florida. The meeting was chaired by George C. Whitner, President and Chief Executive Officer of Florida National. At the outset of the meeting, Cavendes moved that the meeting be adjourned to March 9, 1982. Although the motion was duly seconded, the chair ruled the motion out of order.

10. Cavendes' representative maintained that, under Robert's Rules of Order, the motion to adjourn was in order and should have been entertained. However, the chair announced that the shareholders' meeting would be recessed for two days, until Thursday, February 11, 1982, for the purpose of ascertaining whether there was a quorum.

11. On the evening of February 9, 1982, Florida National publicly announced that there was not a quorum and that business would not be conducted when the shareholders' meeting reconvened on February 11, 1982, but that management would be available at that time to answer questions informally. This announcement was carried in the press.

12. On February 10, 1982, Cavendes filed its Complaint for Specific Performance and Appointment of Special Master. On February 11, 1982, while the Court had Cavendes' Complaint under consideration, the shareholders' meeting resumed. The proxy counter announced that a quorum was not present. Cavendes again moved to adjourn the meeting to March 9, 1982.

13. Cavendes' motion to adjourn was made pursuant to Florida National's by-laws, which provide in pertinent part: "If at any meeting less than a quorum shall be present, the stockholders present or a majority of them may adjourn the meeting to another time and place." This motion was duly seconded.

14. The chair announced that the motion would be considered, but that each person

present would receive one vote, regardless of the number of shares owned. Under this procedure, Cavendes, a shareholder owning 748,700 shares, had the same vote as a shareholder owning only one share.

15. The Florida Corporate Code provides:

607.097  Voting of shares.

(1) *Each outstanding share,* regardless of class, *shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders,* except as may be otherwise provided in the articles of incorporation. If the articles of incorporation provide for more or less than one vote for any share on any matter, every reference to this chapter to a majority or other proportion of shares shall refer to such a majority or other proportion of votes entitled to be cast.

(Emphasis added).

16. Florida National's proxy materials for the special meeting specifically provided:

Each share of such [Florida National] stock outstanding on that date [October 20, 1981] *is entitled to one vote on any matter presented for a vote of shareholders.*

(Emphasis added).

17. Moreover, Florida National's own bylaws provide in pertinent part:

5.  Voting by stockholders:

(a) Right to vote: At the meeting of the stockholders, *every registered stockholder shall be entitled to one vote for every share registered in his name* to be given personally or by proxy in writing
. . . .

(Emphasis added).

18. At the February 11, 1982, meeting, Cavendes objected to the voting procedure and appealed the decision of the chair. The chair entertained Cavendes' appeal, but—over Cavendes' objection—conducted the vote on the appeal by the very voting procedure to which Cavendes had objected. Under the objected-to voting procedure:

(a) the chair was sustained;

(b) the Cavendes' motion to adjourn to March 9, 1982, was defeated by a vote of 58 persons to 3 persons; and

(c) Florida National's subsequent motion to adjourn *sine die* carried by a similar margin.

## CONCLUSIONS OF LAW

1. As a preliminary matter, the Court must determine whether it has jurisdiction to adjudicate the subject matter of this controversy. An initial finding of jurisdiction was made at the February 17, 1982, hearing. *See* Feb. 17, 1982, Transcript Vol. 1 at 29. Notwithstanding this finding, Florida National, in its Motion for Judgment on the Pleadings, urges that this Court lacks subject matter jurisdiction. Florida National concedes, however, that at this stage of the proceedings, *i.e.,* trial on the merits, even if the Court should find there is no federal question jurisdiction because plaintiff cannot succeed on its federal claim, under Section 14(a) of the Act, 15 U.S.C. § 78n(a) (1976), the Court may properly proceed to decide the state law claims under the doctrine of pendent jurisdiction. *See In re Carter,* 618 F.2d 1093, 1104–05 (5th Cir.1980); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 1001 (5th Cir.1974). As the United States Court of Appeals for the Fifth Circuit has stated at length:

Our disposition of the federal claim adversely to plaintiff has not destroyed the *power* of the district court to conduct further proceedings on the state created cause of action. The district court was vested with discretion to hear both federal and state claims upon the filing of the complaint. While a subsequent dismissal of the federal aspect of the litigation affects the propriety of continuing with the state issues, we are not willing to defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim.

*O'Connell v. Economic Research Analysts, Inc.,* 499 F.2d 994, 996 (5th Cir.1974) (emphasis in original), quoting in part *Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970). Because the Court finds a violation of both the Florida Corporate Code and Florida National's bylaws, the Court need not reach the merits of the alleged federal proxy violation under Section 14(a) of the Act, 15 U.S.C. § 78n(a) (1976).

2. The Court finds that at the February 11, 1982, meeting Florida National violated the Florida Corporate Code and the Florida National bylaws by using improper voting procedures (a) to defeat Cavendes' motion to adjourn to a date certain; (b) to determine the outcome of the appeal of the disputed procedure; and (c) to secure adoption of a motion to permanently adjourn *sine die.* As the Court finds that Florida National has violated the Florida Corporate Code and Florida National's bylaws, the Court need not reach the merits of Cavendes' remaining state law claim, which is based on an alleged breach of agreement dated November 20, 1981, as amended.

3. Because improper voting procedures were used at the February 11 meeting, the Court finds that the shareholders' meeting has not been properly terminated, and the eight-day time interval provided by contract has not yet begun to run.

4. The Florida Corporate Code provides that "[e]ach outstanding share, regardless of class, shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders." Florida's current corporate code is predicated on the Model Business Corporation Act. Model Bus.Corp.Act Ann.2d [1977 Supp.] § 1, ¶ 2. Section 607.-097(1), Florida Statutes, repeats verbatim section 33 of the Model Act. The commentary to the Model Act provides:

Early cases dealing with business corporations carried over the concept of per capita voting from corporations ante-dating stock corporations, and having members but not shares. *Under modern practice, whether based on statute, as is the case in all but a few jurisdictions, or on decisions, a shareholder's vote is proportionate to the number of shares held by him, except to the extent that the articles may lawfully provide that certain shares have no vote, or have more or less than one vote.* In 1969, the first paragraph of section 33 was amended to permit the inclusion, in the articles, of provisions permitting shares to have more or less than one vote per share.

■ 5. It is undisputed that Florida National's Articles of Incorporation (as opposed to the bylaws) have no provisions pertaining to voting. Therefore, pursuant to Section 607.097(1), Florida Statutes, voting must be conducted on a per share, not a per capita, basis on all matters.

6. Florida National's bylaws provide:

If at any meeting less than a quorum shall be present, the stockholders present or a majority of them may adjourn the meeting to another time and place.

Article II, Section 4. This section must be read *in pari materia* with Article II, Section 5, which provides:

5. Voting by Stockholders:

(a) Right to Vote. At the meeting of the stockholders, *every registered stockholder shall be entitled to one vote for every share* registered in his name to be given personally or by proxy in writing . . . .

(Emphasis added).

[3] 7. The Florida National bylaws thus provide that all voting must be on a per share, not a per capita, basis. In addition, the Florida Corporate Code prevails over any conflicting bylaw. *Gentry-Futch v. Gentry,* 90 Fla. 595, 106 So. 473, 477–78 (1925); *see Everett v. Riverside Hose Co. No. 4,* 261 F.Supp. 463, 468 (S.D.N.Y.1966). If the Florida National bylaws were interpreted otherwise, then the bylaws would be invalid.

■ 8. Having determined that Florida National violated its own bylaws in conducting the February 11, 1982, meeting, the question then becomes what relief is appropriate. Cavendes seeks injunctive and other equitable relief.

■ 9. It is well established that in shareholder suits, federal courts have been creative in tailoring equitable remedies to the specific needs of the situation. *See, e.g., Treadway Company, Inc. v. Care Corp.,* 638 F.2d 357 (2d Cir.1980); *Gladwin v. Medfield Corp.,* 540 F.2d 1266 (5th Cir.1976); *Bertoglio v. Texas International Co.,* 488 F.Supp. 630 (D.Del.1980). Clearly, for reasons discussed above, the Court cannot allow the results of the February 11, 1982, meeting to stand. To do so would frustrate the policy of free and fair corporate suffrage which underlies the Florida Corporate Code and the Florida National bylaws. Under these circumstances, this Court is constrained to conclude that the actions taken at the February 11 meeting should be voided. *See Kennecott Copper Corp. v. Curtiss-Wright Corp.,* 584 F.2d 1195 (2d Cir.1978).

■ 10. By conducting all voting on a per share basis, rather than per capita, the public interest in fair corporate suffrage will be protected and maintained. The Court also concludes that Cavendes has made a sufficient showing of irreparable injury which will flow from the failure to properly conduct the special shareholders' meeting. When balanced against the harm which Florida National will incur from promptly conducting the meeting in a proper manner, the Court further concludes that the special shareholders' meeting should be promptly reconvened and conducted in the manner ordered herein. *See Cooke v. Teleprompter Corp.,* 334 F.Supp. 467 (S.D.N.Y. 1971); *Dillon v. Berg,* 326 F.Supp. 1214 (D.Del.1971).

11. Finally, the Court has determined, after weighing the possible harm to the respective parties and considering the balance of the equities, that an injunction preserving the status quo with respect to the Alliance merger is warranted. Any harm allegedly occurring to Alliance from the injunction is illusory. Alliance, like Cavendes and Florida National, voluntarily bound itself not to close the Alliance-Florida National merger until eight (8) days after the date of the shareholders' meeting.

In view of the foregoing findings of fact and conclusions of law, it is

ORDERED AND ADJUDGED as follows:

1. Florida National's Motion for Judgment on the Pleadings is denied.

2. Cavendes' request for injunctive relief is granted.

3. The Special Meeting of the shareholders of Florida National shall be reconvened on April 20, 1982, at a site in Jacksonville, Florida, selected by Florida National.

4. George C. Whitner, President and Chief Executive Officer of Florida National, shall preside at the reconvened meeting and any adjournment thereof.

5. As provided in the parties' agreement of November 20, 1981, as amended, the reconvened special shareholders' meeting shall be conducted in a manner that is fair and that is in accordance with Robert's Rules of Order. Further, as nearly as possible, the parties shall be given equal time for presentation at the meeting and speakers from the floor shall be asked to alternate between "pro" and "con" on any resolutions presented.

6. At the reconvened meeting, the chairman shall, as the first order of business, recognize Cavendes' representative and conduct all necessary proceedings for proper consideration of Cavendes' motion to adjourn to a date certain, but such date shall not be later than May 11, 1982. Moreover, there shall be no further adjournments to a date beyond May 11, 1982.

7. Each share of Florida National common stock shall be entitled to one vote, in person or by proxy, on all matters brought to a vote. Any challenges to the voting procedure, ballots, or proxies shall be presented to the chairman, either initially or within five (5) days after the meeting date, subject to review by this Court.

8. The chairman shall also assure that there is an orderly consideration of any other matters properly brought before the meeting.

9. Florida National shall not close the Alliance merger until eight (8) days after

the reconvened meeting, or any adjournment thereof.

For the foregoing reasons, the Court will on this date enter final judgment in accordance with these findings of fact and conclusions of law.